Good morning, Judith Lott, for the petitioner and appellant, Mr. Joga Singh. Push your mic down just a little bit. Perfect. Okay. Thank you. The threshold issue in this case is whether the immigration judge erred in holding that Joga Singh's asylum claim failed for lack of evidence, specifically that Joga failed to submit confident or credible corroboration of his identity. In analyzing the case, Joga relies on the case of Sidhu v. INS, which is the only case cited by the Board of Immigration Appeals, in its decision not to disturb the immigration judge's credibility decision below. In this case, the Board of Immigration Appeals addressed only the immigration judge's findings about Joga Singh's identity. For this reason, I argue that a reversal of the finding that Joga failed to adequately identify himself is paramount to a finding that the balance of his testimony is credible. If I can successfully convince this Court that the immigration judge erred in holding that Joga failed to prove his identity, we are left with clear Ninth Circuit precedent which holds that credible testimony alone is sufficient to carry an asylum applicant's claim. If I can successfully convince this Court that the immigration judge erred in holding that Joga failed to prove his identity, we are left with clear Ninth Circuit precedent which holds that credible testimony alone is sufficient to carry an asylum applicant's claim. And if I can successfully convince this Court that the immigration judge erred in holding that Joga failed to prove his identity, we are left with clear Ninth Circuit precedent which holds that credible testimony alone is sufficient to carry an asylum applicant's claim. And if I can successfully convince this Court that the immigration judge erred in holding that Joga failed to prove his identity, we are left with clear Ninth Circuit precedent which holds that credible testimony alone is sufficient to carry an asylum applicant's claim. My second point on this issue is that I believe Joga did produce better evidence of his identity, his claim and his travels, better evidence than any duplicate that he could have received after the year of 2001. He came to the United States in 2001. His case got to the Court 2002, 2003. The judge wanted duplicates. By its very nature, the duplicate would have had to have been prepared after 2001. What Joga did produce was a complete copy of his Canadian asylum application, which was stamped, received by the Canadian Immigration Refugee Board, December 12, 1996. Any document that he could have come up with after 2001 would, by its very nature, have been prepared solely for the presentation to the Court and would not have been prepared contemporaneously with the event that it is attempting to corroborate. For this reason alone, the Court below could have found that the document is unreliable. So it is my position that his Canadian asylum application stamped from 1996 is better evidence and that duplicates obtained after 2001 are not necessary, regardless of whether he relied on the government to produce these documents. Counsel, could I invite your attention to a different issue for a second? As I read I.J.'s opinion, he found that there was no objective, reasonable fear of persecution of this Sikh Indian citizen, and that overcomes the presumption of the law. I think that what the I.J. was saying is that the situation has changed in India, most notably by a Sikh becoming the prime minister of India, and that objective fear of persecution by Sikhs no longer exists. Now, aren't we bound by that I.J.'s determination, if there is substantial evidence, that changed country conditions as detailed in his finding established no objective fear of persecution? Well, I would argue we're not bound by that now because the board didn't address that issue. So if we remand the case to examine that issue, the State Department reports that came out for 2006, I believe, support the position of Joga Singh that the police throughout India continue to act with impunity. Of course, that's not evidence before us today. But because the board did not uphold the immigration judge's decision on this issue, I would argue that it's appropriate for remand and for submission of new evidence on the issue. I would note that the immigration judge did presume in his decision, which appears in the record at page 55, that Joga does have a subjective fear of returning to India. The immigration judge also found that Joga's demeanor was appropriate and that it's a subjective fear. No, he has a subjective fear. Right. But his finding was that there was no objective, reasonable basis for that fear today. Right. Well, I would also respect that. I take your point that if the BIA did not address that point and we have a petition of reviewing the BIA decision, that the most we can do is to remand it for a determination of that point. Exactly. Under Ventura. Thank you. Thank you. So I'll submit. Well, you've got some time. After the government has spoken, you may wish to respond. Thank you. Before you get started, counsel, do you agree with your opponent that if there is no objectively reasonable basis for fear of persecution, that finding was not made by the BIA, we cannot deny petition on that ground? No. Well, first, my name is Isaac Campbell, and I represent the United States in this matter. Secondly, the BIA decision and the way that it is worded, it stated that the ‑‑ it put it in the context that the Respondent is contesting the adverse credibility finding, and so it dealt with specifically that issue, but it did not say that it rejected the immigration judge's decision on the basis thereof, particularly with respect to the lack of objective fear and the changed country conditions. So I would not agree that this Court could not review that issue. But by way of a road map ‑‑ Say that again. That is to say, I think I heard you say, but I'm not sure you really want to say that. If we were to disagree with the holding of the BIA on adverse credibility, that is to say, if we were to say, listen, the adverse credibility finding is wrong, we will treat his testimony as credible. Are you saying that we are now in a ‑‑ would then be in a position to review without remand as to whether or not the objective fear of persecution is valid or invalid? We could just say we think, for example, we think that the fear, objective fear, is valid and therefore grant the petition without remanding under Ventura? Is that your position? Your Honor, I guess my position would be that I'm saying that it's not clear from the BIA decision whether or not it's adopting, affirming, or rejecting the judge's decision. It's not clear from this. And so ‑‑ It just didn't reach the ‑‑ that's right, the BIA did not reach that question. Yes, Your Honor, that's correct. And I think that Ventura would state that where the board had expressly rejected it, that it would be beyond the review of this court. However, because the BIA did not address this issue, that certainly the immigration judge's decision is, at least that portion of it is, before this court and before the court's review. Even though ‑‑ we're not really reviewing the immigration judge's decision in this case, we're reviewing the BIA's decision, right? Yes, Your Honor, that is correct. It's not clear from this whether the BIA is actually addressing that issue, though. Well, I think that's a question that both Judge Fletcher and I are interested in. Can we decide whether there was objective fear of persecution? Or if that issue was made out in the I.J.'s opinion, must we remand to the BIA for the BIA to make that determination? Okay, I'm not answering that question clearly. Certainly it's not something the board ‑‑ that this court should reach back to the immigration judge's decision. If this court is reading that the BIA is not addressing this issue and does not touch it at all, then this would not be something that the court should review. So you're agreeing with your opposing counsel that if we reach this issue, if we disagree on the adverse credibility ground, and if we reach this issue, we should remand it to the BIA to determine whether there's an objective fear of persecution? Yes, Your Honor. Okay. By way of roadmap, first I'd like to put Petitioner's argument into context, provide the court with three reasons why Petitioner's claim is unavailing, and then address some specific arguments that Petitioner provided before the court today. First, this is a case that is about credibility and Petitioner's failure to meet his burden in establishing eligibility for asylum. The pertinent issue before this court is whether substantial evidence requires this court to grant asylum to Petitioner. It does not. Moreover, Petitioner was provided due process as he had two full and fair hearings in which he was represented by counsel. Now, putting Petitioner's argument into context, what does the failure to produce evidence of identity really have to do with credibility? It sounds like the I.J. was just annoyed that he didn't produce that evidence, but there was a lot of evidence of his credibility, and there was the Canadian application. What's that have to do with whether you can believe him or not? Well, in terms of the ‑‑ as Petitioner conceded in his brief, the Petitioner has the burden of proof in establishing eligibility for asylum. Inherent in establishing eligibility for asylum is establishing identity, which is a central component of establishing eligibility for asylum. Yes, but does it have anything to do with credibility? Well, yes, Your Honor. And the reason why it has to do with credibility is simply because step number one, identity permeates all of the rest of the asylum application. And the first step is establishing that the alien is who the alien purports to be. And in addition, the alien is claiming that these things happened to him. There was a lot of evidence of that, though, wasn't there? I mean, they're apparently brothers and all that, and yet they're saying, well, you didn't produce the documentation, which doesn't seem to me to be really having to do anything with credibility. Well, Your Honor, it has to do with credibility inasmuch as, as I said, because that permeates all of the ‑‑ it permeates all of the burden of proof to establish those things necessary, including identity. And here the Petitioner had the opportunity to provide those documents. The record shows that the Petitioner was able to provide those documents for asylum applications in Germany and Canada without difficulty. When Petitioner was asked about his failure to do so, he provided no objective reason he could not do so, and, in fact, he conceded. All of that is about the I.J.'s annoyance with him not producing the documents, not that he didn't believe him. Well, if the I.J. actually talked about ‑‑ there were several reasons that the I.J. felt there was issues with identity and particularly with credibility. The fact that he failed to produce the birth certificate and the school records was one part of the I.J.'s decision, but it wasn't the only component. At page 49 of the administrative record, the administrative judge, when he talks about this issue of adverse credibility, he talks about four factors to be looked at, and he found that the ‑‑ with the exception of demeanor, and only with demeanor because there was an interpreter, the court found that the Petitioner was not credible. There was an adverse credibility determination for several reasons. And, in fact, beyond just the birth certificate and the school records, there were several documents that the I.J. documented should have been provided and was not. I think that the issue in this case, and particularly the issue that Petitioner brings before the Board, Petitioner argues that, in a nutshell, they relied on the government to provide some documents, and because the government failed to do so, they are ‑‑ the Petitioner is arguing that that is the basis for remand, according to Petitioner's argument. The credibility point that Judge Hugg was talking about, is it your position that if he can't establish his identity, nothing else he says should be considered credible? Yes, Your Honor. That's a fair statement. I think, first, identity must be established, and as I said, it permeates everything else. So I think that's a central issue. Is there any basis for finding that he was not credible as to the beatings he claimed he received from the police or his association in the various Sikh organizations? Yes, Your Honor. And from pages 50 through 55 of the administrative record, the government, the immigration judge discusses several instances or problems with the testimony, with consistency, with the failure to provide easy available documentation, and the fact that the testimony lacks sufficient detail. And so there are several bases for the judge's decision. I think three points are central that also need to be made. I think, first, I think it's important to note that Petitioner was aware of the importance of the ‑‑ of providing these documents. Petitioner conceded that he could have obtained these documents. He gave no objective reason why he failed to do so. And if we look at pages ‑‑ at page ‑‑ administrative record, page 142, he acknowledged that he could receive the documents that are issued here. He did not provide them. That the Petitioner's counsel was aware of the fact these documents weren't provided and that at the administrative record at page ‑‑ that the Petitioner did not make a motion to continue and the immigration judge stated that these documents were not provided and that they should be, that the Petitioner's counsel did not raise this issue to the fact that there was not this continuance, did not raise this issue of the failure of a continuance to the board, did not move to reopen the case, and they also claim that there should be some estoppel issue, that the government should be claimed ‑‑ that the government should be estopped from relying on this decision. However, that requires affirmative misconduct, which Petitioner has not seen. And lastly, Petitioner has provided a case, Lodha, in which states that an individual, that if an individual is deemed credible, that you cannot deny asylum eligibility or find that a Petitioner is ineligible for asylum simply because they failed to provide corroborating evidence. Now, we've taken you over time. I've got one last question, which I hope you can answer quickly. The Petitioner asks really for a very limited form of remedy, which is to say remand to allow the Petitioner to provide the documents that he says he was counting on the government to provide. Why is that an unreasonable request? It is unreasonable because the Petitioner had the opportunity first during the immigration hearings to raise this issue and ask for a continuance. Petitioner failed to do so. Petitioner raised the issue with the immigration judge, but when the immigration judge stated his recollection, Petitioner's counsel, you know, agreed with the immigration judge and did not move to continue the move for continuance. They did not ‑‑ Petitioner's counsel did not raise that issue in its appeal to the board. It did not move to ‑‑ Petitioner's counsel did not move to reopen and provide those documents to the board. And so at this juncture, having not raised that issue at the time that was appropriate to ask for a continuance, at this point what Petitioner is really arguing is to stop the government and Petitioner has not met his burden in proving the government has done that. Thank you. Oh, I'm sorry. Judge Huggins has a question. I have a couple of questions. One, I noticed in the IJA's decision, it states the court finds that the Respondent's claim for asylum fails for his inability to establish his identity. Then the BIA says the Respondent contests the immigration judge's credibility finding. The immigration judge based his adverse credibility finding largely on the Respondent's failure to prove his identity. Then the court goes on, BIA, appeals for the Ninth Circuit in which the case is raised. It is held that an asylum applicant's failure to provide nonduplicative material and easily available evidence can support an adverse credibility finding. One, I find that kind of hard to understand when you just fail to produce some documents. But it makes it very clear that the BIA is relying on the statement of the IJA that it's largely because of the credibility finding and that is all that the BIA has considered. Isn't that correct? No, Your Honor. It's not correct for this reason. Everything you read is correct, but it's not complete. The immigration judge in his decision does not. I'm really addressing more the BIA's. Well, in terms of how it sums up what the immigration judge found, the BIA is saying that the adverse credibility finding is based on the failure to prove identity, although it is not based exclusively on this failure to prove identity. And so that distinction... The IJA didn't give any other reason, did he? For the adverse credibility finding, Your Honor? Yes. Yes, he did. And in fact, where the IJA gave that, the basis for that, on pages 55 of the, with the court's indulgence in this particular place that he, the IJA stated that there were other bases for finding the, for the petitioner was not credible for three of the four factors. In addition to the issues... What's the record citation for your statement? The court's indulgence. On pages, in fact, if I can go in order of the, where you can find that in the immigration judge's finding. Go ahead. Okay. On page 49, he states that, with the four factors, and from pages 49 through 55, he discusses other bases for finding the adverse credibility finding, for which identity was a part of that decision, but the record evidence clearly shows that that was not the only basis for his determination that the petitioner was not credible. And so when we come back to the BIA decision, which is what Your Honor was focusing on, while that may have been a, as they constitute a large part of the failure to provide identity, it was a large part of the basis for the adverse credibility finding. It was not the sole basis. And that's important, because then the failure, the adverse credibility finding is not based solely on a failure to provide documents, but a plethora of other issues as well. I believe Your Honor had one more question. He said two questions. I'm not sure if that was... Thank you. Are we finished? Thank you. Response? With regard to whether this Court should review the additional adverse factors cited by the judge, from my memory, I'm remembering that the judge, his only fault with Joga's testimony was vague, vague evidence. Vague. There was never any point where he pointed to a statement and said the statement is inconsistent, the statement is inconsistent with a written declaration, this is inconsistent with country conditions, this is internally inconsistent. I want to point this Court also to Sidhu and Lada. It wasn't only vague. It was lack of details. I mean, this man was claiming to be a militant in the AISSF. And when asked about the groundwork beliefs of this outfit, he seemed not to know too much about it. So that was an element in not believing what he was claiming. Joga was a student when he left India in 1991. At the time that he testified before the immigration judge, it was approximately 2003. He had aged 13 years in the interim. He was a member of a student group in the height of the turmoil in the Punjab in India. But I want to point this Court to Sidhu and Lada, because in both of those cases, the immigration judge, to quote this Court, in Lada, contained a hodgepodge of rationales for the adverse credibility decision. This Court found at least some of them to be incorrect and remanded Lada. Sidhu also found that there were, quote, a number of factors, but the Board apparently only saw two valid reasons for viewing the petitioner as not credible. In this case, the Board found only one. I want to also point out that the case that the Board cites Sidhu to show that evidence is available and non-duplicative, Sidhu only had to produce his father, who was sitting in the next county in the United States. And that was determined by this Court to be easily attainable, pertinent, non-duplicative testimony. Joga Singh left India in August of 2002. He traveled through Moscow. He traveled through Germany. His original passport was taken in Germany. He applied for asylum in Germany. He then went to England. He applied for asylum in England. He provided some original documents to England. Then to Canada, where he applied for asylum. We have evidence of this. Other original documents were left in asylum. By the time he arrived in the United States in February of 2001, I would argue that no document from India is easily attainable. Last point. Mr. Campbell provided something in 2003 claiming that this case is governed by the evidentiary rules of the REAL ID Act. I think we can all agree that it is not. The BIA decision in this case was issued February 2, 2004. And the REAL ID Act affects cases only in which the administrative order is entered after May 11, 2005. Thank you. Thank you very much.
judges: Hug, W. Fletcher, Bea